Maral J. Shoaei – SBN 345117
shoaei.maral@dorsey.com
DORSEY & WHITNEY LLP
430 Cowper Street, Suite 250
Palo Alto, CA 94301
Telephone: (650) 857-1717

Case Collard - SBN 245834
collard.case@dorsey.com
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202
Telephone:   (303) 629-3400
Facsimile:   (303) 629-3450

***Attorneys for Plaintiff Quest Software Inc.***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUEST SOFTWARE INC., <br><br> Plaintiff, <br><br> v. <br><br> QUEST GLOBAL SERVICES, PTE. LTD., <br><br> Defendant. | CASE NO. <br><br> **COMPLAINT FOR:** <br><br> **(1) FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114);** <br><br> **(2) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a));** <br><br> **(3) COMMON LAW TRADEMARK INFRINGEMENT;** <br><br> **(4) COMMON LAW UNFAIR COMPETITION;** <br><br> **(5) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200)** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Quest Software Inc. ("Quest" or "Plaintiff"), by its attorneys Dorsey & Whitney LLP, files this trademark infringement and unfair competition complaint against Defendant Quest Global Services, Pte. Ltd. ("Quest Global" or "Defendant"), and hereby alleges as follows:

### INTRODUCTION

1. This is an action arising under the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), the laws of the state of California, and the common law based upon Defendant's (i) infringement of certain federally registered trademarks owned and used by Quest; (ii) false designations of origin and false representations, and unfair competition, in violation of the Lanham Act; (iii) trademark infringement under the common law of the State of California; and (iv) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL").

2. Quest brings this action to put an end to Defendant's clear and deliberate encroachment on, and violations of, Quest's trademark rights in its QUEST brand. Defendant intentionally aims to misappropriate Quest's trademark rights by expanding the goods and services it offers into areas in which Quest has long-established federal and common law trademark rights.

3. Quest is a complex technology and security software and solutions company that has been operating since 1985.

4. Quest owns the inherently distinctive QUEST trademark, which it has been using in the United States since Quest's original founding and inception in 1985 in connection with custom computer software and consulting, cloud management, software as a service, security, backup and recovery, and workforce mobility good and services.

5. Quest owns several federal trademark registrations, as well as common law rights, for the QUEST and QUEST SOFTWARE trademarks and variations thereof (the "QUEST Marks") for goods and services that include, but are not limited

to, custom computer software and consulting, database management, cloud management, software as a service, security, backup and recovery, and workforce mobility.

6. Quest's federal trademark registrations are incontestable under 15 U.S.C. § 1065.

7. Historically, Defendant's core offerings have included and currently include "[c]onsulting in the field of engineering; Product development and engineering services for others," but recently, Defendant has also deliberately expanded its goods and service offerings to include software and software-related services that are highly similar to or competing with Plaintiff's software and software-related services, including database development services.

8. By expanding its goods and services offerings, Defendant has wrongfully taken advantage of the significant goodwill and brand recognition that Quest has acquired in the QUEST brand since its founding four decades ago.

9. As detailed below, Defendant has adopted both a name, "Quest Global," and an associated stylized logo, which incorporates the word "Quest" as the dominant element in a sans serif font with a stylized "Q" letter.

10. Defendant's "Quest Global" name and associated stylized logo is confusingly similar to Quest's own name, "Quest Software," and associated logo, which includes the identical word "Quest"—also as the dominant element of Quest's name—in a sans serif font with a stylized "Q" letter.

11. The sans serif font chosen by Defendant for its "Quest" wording is nearly identical to, and indistinguishable from, that used and adopted by Quest.

12. Below is a side-by-side comparison of Quest's QUEST Marks and Defendant's confusingly similar marks, demonstrating Defendant's confusingly similar use of "Quest" in a nearly identical, indistinguishable sans serif font:

| Quest's Mark | Defendant's Infringing Mark |
|---|---|
| | |

13. These significant similarities exist between the QUEST Marks and Quest Global's name and associated stylized logo, notwithstanding that Quest recently undertook a brand refresh in which it updated the features in the stylized "Q" letter portion of the QUEST Marks' appearance, but otherwise left the sans serif font essentially unchanged with the word "Quest" serving as the dominant element of the QUEST Marks.

14. Prior to Quest's brand refresh, there were even greater similarities between Quest's stylized logo and Quest Global's name. In particular, Quest's stylized logo contained a stylized "Q" letter, the circular portion of which was disconnected where the tail of the "Q" should begin, and a small square to the lower right of the "Q" where the circular portion is disconnected, which looked like a magnifying glass (the "Former QUEST Logo"), while Quest Global's stylized logo contains a stylized "Q" letter the circular portion of which is disconnected where the tail of the "Q" should begin, and a small circle to the lower right of the "Q" where the circular portion is disconnected, which looks like a magnifying glass.

15. Below is a side-by-side comparison of the Former QUEST Logo and Defendant's confusingly similar marks:

| The Former QUEST Logo | Defendant's Infringing Mark |
|---|---|
|  | |

16. Even with Quest's brand refresh, however, Quest Global's name and stylized logo is likely to cause confusion with the QUEST Marks because (1) they both include the identical word "Quest" as the dominant element in a nearly identical, indistinguishable sans serif font; and (2) companies go through brand refreshes regularly such that consumers may perceive any minor distinctions in Quest Global's name and stylized logo as being a part of a brand refresh by Quest.

17. As a result, Defendant has violated and misappropriated, and continues to do so, Quest's rights in the QUEST Marks under federal law, the laws of the State of California, and the common law of the State of California.

## PARTIES, JURISDICTION, AND VENUE

18. Quest is a corporation organized under the laws of the State of Delaware with a business address at 20 Enterprise, Suite 100, Aliso Viejo, CA 92656-5356.

19. Defendant is a limited company incorporated and headquartered in Singapore at 7 Temasek Boulevard, #09-04, Suntec Tower One, Singapore 038987.

20. This Court has jurisdiction over the claims in this Complaint pursuant to 15 U.S.C. §§ 1114(1), 1125(a)(1)(A) and 28 U.S.C. §§ 1331, 1338, and 1367.

21. Upon information and belief, this Court has personal jurisdiction over Defendant because Defendant's U.S. headquarters are located in this District at 2200 Laurelwood Road, Santa Clara, California 95054, and Defendant has additional offices in this District located at 445 Lakeside Drive, Sunnyvale, California.

22.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant has two offices in this District, one of which is its U.S. headquarters, and is subject to the Court's personal jurisdiction with respect to this action.  Additionally, as described below, a significant portion of Defendant's conduct complained of herein occurred in this district, including its purchase of companies in this district that resulted in the expansion of its goods and services.

## THE QUEST BRAND AND TRADEMARKS

23.     In 1985, Quest Software was founded, providing consulting services and custom software for HP under the name Quest Software.

24.     In 1987, the original founders of Quest Software sold Quest's business, name, and accompanying rights to a new entity that continued operating under the Quest Software name in the software market, selling "off the shelf" solutions to HP for its Multi-Programming Executive (MPE) customers.

25.     Since its inception four decades ago, Quest has consistently offered an array of software-related products and services, starting out with those consulting services and custom software for HP before expanding into the database management market in 1996 with an Oracle SQL database tuning product.

26.     Since then, Quest has significantly expanded its software goods and service offerings, which includes complex technology and security solutions, including its portfolio of software solutions spanning database management, data protection, cloud management, software as a service, endpoint systems management, identity and access management, data modeling and optimization for AI, and platform management for Microsoft solutions, as well as consulting services, both nationally and internationally (the "Quest Services"), which it has continuously offered under the QUEST Marks since 1985.

27.     In 1997, Quest took its operations global, first opening an office in the United Kingdom, and continuing to grow to the point that it now has 66 offices in 17 countries.

28.    On September 28, 2012, third-party Dell purchased Quest Software and merged it into Dell's Software group, wherein Quest still maintained its own brand identity under the QUEST Marks by offering its Quest products and customer support for such products in connection with the QUEST Marks.

29.    Today, more than 45,000 organizations, including over 90% of the Fortune 500 companies, rely on Quest to unlock the power of technology to innovate and modernize for the future.

30.    With a global team of dedicated professionals and a powerful portfolio of software solutions, Quest is helping enterprises conquer complexity and accelerate innovation—at scale and with confidence.

31.    Quest has been using the QUEST Marks in U.S. commerce, including in California, since at least as early as December 1985 in connection with computer software-related goods and services.

32.    Quest's QUEST Marks symbolize extensive goodwill and consumer recognition developed by Quest through decades of substantial sales of complex technology and security solutions, including its portfolio of software solutions spanning database management, data protection, cloud management, software as a service, endpoint systems management, identity and access management, data modeling and optimization for AI, and platform management for Microsoft solutions, as well as consulting services and other related goods and services under the QUEST Marks and through substantial and extensive advertising, promoting and popularizing of the marks in the United States for 40 years and internationally for 28 years.

33.    Based on its use of the inherently distinctive QUEST Marks, Quest applied for, and the U.S. Patent and Trademark Office ("PTO") granted, numerous federal trademark registrations for such Marks, as shown below (collectively, the "QUEST Registrations"):

| Reg. No. | Trademark | Goods |
| --- | --- | --- |

| Reg. Date | | |
|---|---|---|
| 2,745,496 Aug. 5, 2003 | QUEST SOFTWARE | Cl. 9: Computer software, namely for database, application and output management |
| 1,684,124 Apr. 21, 1993 | QUEST | Cl. 9: Computer software, manuals and guidebooks sold as a unit for use in the manipulation, analysis, presentation and development of forms and reports regarding business information and other data stored in an underlying database management system |
| 3,225,071 Apr. 3, 2007 | QUEST | Cl. 9: Computer software for managing, securing, tuning and optimizing, replicating, storing, backing up, recovering and reporting on computer files and databased; computer software for managing, monitoring, analyzing, diagnosing, configuring, reporting on, predicting, and optimizing the performance, availability and security of computer programs, operating systems, servers and networks; computer software for migrating between computer-operating systems, software programs, databases, servers and networks; computer software for designing, developing, testing and debugging of computer programs; computer software for ensuring compliance with government regulations regarding the gathering, communicating, maintaining, securing, auditing and storing of information; and computer hardware |
| 5,370,028 Jan. 2, 2018 | Quest | Cl. 9: Computer software for managing, securing, tuning and optimizing, replicating, storing, backing up, recovering and reporting on computer files and databases; computer software for managing, monitoring, analyzing, diagnosing, reporting on, predicting, and optimizing the performance, availability and security of computer programs, operating systems, servers and networks; computer software for migrating between computer-operating systems, software programs, databases, servers and networks; computer hardware; and, computer software, manuals and guidebooks sold as a unit for use in |

| | | the manipulation, analysis, presentation and development of forms and reports regarding business information and other data stored in an underlying database management system |
|---|---|---|

34. Each of the four above-referenced U.S. Registrations is incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as **Exhibit A** are true and correct copies of the trademark registrations for the QUEST Registrations.

35. Quest also has registered rights for (1) the QUEST mark in Canada, Mexico, Brazil, Chile, Austria, Benelux, Finland, France, Germany, Ireland, Italy, Norway, Portugal, Spain, United Kingdom, European Union, China, Hong Kong, India, Singapore, Taiwan, Thailand, Australia, and New Zealand; (2) the QUEST SOFTWARE mark in Canada, Mexico, and Brazil; and (3) the Former QUEST Logo design mark in Canada, Norway, United Kingdom, Hong Kong, India, Taiwan, and Thailand.

36. In addition to the federal QUEST Registrations listed above, Quest is the owner of common law rights in its QUEST Marks as a result of its extensive and continuous use of the QUEST marks in U.S. commerce since at least as early as December 1985 in connection with complex technology and security solutions, including its portfolio of software and software as a service (SAAS) solutions providing database management, data and application governance, security, performance optimization, replication, protection, migration, backup and recovery; virtual and cloud computing infrastructure management, endpoint systems management, identity and access management, cybersecurity and auditing, data modeling and optimization for AI, and platform management for Microsoft solutions, as well as technical consulting services and other goods and services related to the foregoing.

37. In 2025, Quest undertook a brand refresh in which it modernized the Former QUEST Logo to reflect an updated logo that altered the features in the stylized "Q" letter portion of the QUEST Marks' appearance—namely, that the left

side of the stylized "Q" letter now contains an arrow pointing towards the center of the "Q," and the "Q" no longer has a magnifying glass-like appearance—but otherwise left the sans serif font unchanged with the word "Quest" serving as the overwhelmingly dominant element of the QUEST Marks.

38.    In sum, though Quest has refreshed its brand with an updated logo, the core of the QUEST Marks remain: the word "Quest" in a sans serif font is the dominant element of Quest's brand and represents the significant and valuable goodwill that Quest has developed in the QUEST Marks among consumers in the United States and in California.  This goodwill represents Quest's forty years of use of the QUEST Marks.

**QUEST GLOBAL'S INFRINGEMENT OF THE QUEST MARKS**

39.    Defendant Quest Global was founded in 1997 in Schenectady, New York under the name QUEST to provide services exclusively to General Electric ("GE").  For years, Defendant's work was limited to that single customer.

40.    Defendant's name QUEST appears to be an acronym for Quality Engineering & Software Technologies, LLC, as depicted in the following logo that Defendant used upon its founding:



41.    Defendant provides end-to-end engineering solutions.

42.    Defendant rebranded in 2007 and, in connection with that rebrand, began using the following logo:



43. As demonstrated by the logo Defendant adopted in 2007, which stated "BORN TO ENGINEER," the services it offers are engineering-focused.

44. Defendant currently operates 93 global delivery centers located in 18 different countries.

45. On May 10, 2022, Defendant filed U.S. Application No. 97/403,671 with the PTO to register the QUEST GLOBAL design mark in connection with "Consulting in the field of engineering; Product development and engineering services for others" in International Class 42 under 15 U.S.C. § 1051(b) based on a *bona fide* intent to use the following mark in U.S. commerce:



46. Defendant currently uses the plain text wording QUEST GLOBAL to reference and brand the company, as well as its associated logo (collectively, "the Infringing Marks"), in connection with its engineering services.

47. Defendant also uses a color version of its Infringing Marks in connection with its engineering services.

48. According to Defendant's website, Defendant operates in the Aerospace & Defense, Automotive, Hi-Tech, Energy & Utilities, Industrial, MedTech & Healthcare, Rail, and Semiconductors industries.

49. By Defendant's own admissions, it is, and has been since its founding, an engineering company.

50. For example, Defendant's website repeatedly professes that it is "in the business of engineering." *See* https://www.questglobal.com/the-quest-global-advantage/.

51. Similarly, Defendant's LinkedIn page states:

COMPLAINT
CASE NO.

-11-

> We are Quest Global. We're in the business of engineering, but what we're really building is a brighter future. It's not just what we do, but why we do it that makes us different. We believe engineering has the unique opportunity to solve the problems of today that stand in the way of tomorrow. For more than 25 years, we have strived to be the most trusted partner for the world's hardest engineering problems. As a global organization headquartered in Singapore, we live and work in 18 countries, with 84 global delivery centers and offices, driven by 21,000+ extraordinary employees who make the impossible possible every day.

*See* https://www.linkedin.com/company/quest-global (emphasis added).

52.     Despite Defendant having always been and currently being an engineering company, its business practices have fundamentally changed and expanded in recent years such that its engineering services now encompass software-related goods and services.

53.     Recently, Defendant has deliberately sought to expand into the computer software market by offering software-related goods and services branded under the Infringing Marks in a clear attempt to trade on the goodwill and reputation Quest has spent decades acquiring in the software industry.

54.     Upon information and belief, Defendant has recently acquired third-party companies that offer software services that directly overlap with or are direct competitors to the Quest Services offered by Quest under the QUEST Marks.

55.     For example, on May 1, 2024, Defendant acquired People Tech Group, which offers AI, data, and software-related goods and services.

56.     In connection with Defendant's acquisition of People Tech Group, People Tech Group's website prominently displayed the Infringing Marks on its website at the URL: https://peopletech.com/ptg-quest.

57.     Similarly, on September 1, 2022, Defendant acquired EXB Solutions, which provides software-related services.

58. Defendant's website contains an announcement of its acquisition of EXB Solutions that touts that "[t]his addition expands the company's *capabilities in software* and systems engineering . . . ," and EXB's provision of "systems and *software engineering solutions* . . . ," while prominently displaying the Infringing Marks on the page, which is located at the URL: https://www.questglobal.com/news/press-releases/quest-global-acquires-exb-solutions-to-join-forces-with-its-u-s-subsidiary-quest-defense/.

59. Likewise, on June 29, 2021, Defendant acquired Synapse Design, a company headquartered in this judicial district, which creates software design solutions.

60. Defendant's website announced the acquisition of Synapse Design, touting that the acquisition will allow Defendant to provide "design services, consulting, *and software development services*," by combining Synapse's capabilities "with [Defendant]'s capabilities in providing embedded & software services and expertise . . . ."

61. The announcement of the Synapse Design acquisition prominently displays the Infringing Marks, and can be found at the following URL: https://www.questglobal.com/news/press-releases/quest-global-acquires-synapse-design-to-enhance-expertise-in-semiconductor-and-connected-engineering/.

62. With its intentional expansion into the software market, Defendant has also expanded its customer base, which it admittedly focused previously only on large, global clients such as General Electric, Ford, BMW, Airbus, Pratt & Whitney, Rolls-Royce, and Siemens, offering those few clients bespoke services. *See, e.g.*, https://www.forbesindia.com/article/hidden-gems-2018/quest-global-engineering-excellence/50821/1

63. In fact, several news articles have detailed Defendant's heavy reliance on General Electric as the primary customer of its services, with General Electric accounting for upwards of 90% of Defendant's revenue alone for a significant portion

of its existence. *See, e.g.,* https://www.forbesindia.com/article/hidden-gems-2018/quest-global-engineering-excellence/50821/1; https://www.fastcompany.com/1354288/make-them-need-you-become-indispensable-to-your-clients.

64.    However, since expanding its service offerings into the software market, Defendant has expanded the clients it serves.

65.    In conjunction with its expansion of services and its client base, Defendant has also sought to expand the regional footprint of its operations, which, for most of Defendant's existence, have been focused in Singapore and India. *See, e.g.,* https://www.forbesindia.com/article/hidden-gems-2018/quest-global-engineering-excellence/50821/1.

66.    Defendant's regional expansion is demonstrated by its filing of trademark applications in both the United States and various countries across Europe and Asia in 2024.

67.    Specifically, following Defendant's software-related acquisitions, on May 17, 2024, Defendant filed U.S. Application No. 98/556,609 with the PTO to register its logo, which consists entirely of an illustration of the Infringing Marks, in connection with "Supply chain management services" in International Class 35 and in connection with:

> Design of new products for others; Scientific and technological services, namely, research and design in the field of computer software, computer hardware, computer firmware, and computer datacenter architecture; Development and implementation of customized software, hardware and technology solutions for others for the purpose of testing of electronic components and electronic systems and/or productization; Technical consulting services in the fields of datacenter architecture, public and private cloud computing solutions, and evaluation and implementation of internet technology and services; Data as a Service (DAAS) featuring software for collecting, analyzing, integrating, transforming and providing access to data and information, and managing information

COMPLAINT
CASE NO.

-14-

technology (IT) hardware assets; Software as a service (SAAS) services featuring software for firmware-over-the-air (FOTA), automation of manufacturing equipment, asset tracking and monitoring, product maintenance incorporating blockchain technology; Consulting services in the field of cloud computing; Providing virtual computer systems and virtual computer environments through cloud computing; Consulting services in the field of manufacturing automation; Product development and product development consultation; Product development and product development consultation in the field of product lifecycle management; Computer software development in the field of product lifecycle management

in International Class 42 under 15 U.S.C. § 1051(a) based on current use in U.S. commerce with a stated first use date at least as early as March 2022.

68.     Defendant's use of the Infringing Marks is confusingly similar to Quest's QUEST Marks, as the dominant element of both marks is the term QUEST, with Defendant's mark followed by the descriptive, non-distinctive term "GLOBAL."

69.     Notably, Defendant disclaims any rights to the word "GLOBAL" in connection with its word mark application for the Infringing Marks, meaning the word "Quest" is the sole distinctive term in its Infringing Marks.

70.     The similarities between the marks do not end there, however, as both marks utilize a nearly identical sans serif font for the word "Quest" in their marks.

71.     Although Defendant has been operating under the Quest Global name since its founding, its lack of software-related services and limited client base rendered it less likely that consumers would have confused Defendant's Infringing Marks with Quest's QUEST Marks.

72.     Defendant's recent, deliberate expansion of its services into the software market combined with its expansion of its client base and regional footprint renders it likely that customers will be confused between Defendant's Infringing Marks and

Quest's QUEST Marks.

73.   As soon as Quest became aware of Defendant's expanded service offerings, use of the Infringing Marks, and change in business practices to expand its client base and regional footprint, Quest enforced its trademark rights.

74.   Quest has been objecting to Defendant's use of the Infringing Marks since July 2022, when its enforcement efforts against Defendant first began internationally.

75.   On August 8, 2022, Quest submitted a letter of protest to the PTO's Deputy Commissioner for Trademark Policy protesting Defendant's Application No. 97/403,671, wherein subsequently, on March 7, 2023, the PTO issued an office action refusing Defendant's application based on a likelihood of confusion with the Quest Registrations.

76.   On September 15, 2022, Quest sent Defendant a cease-and-desist letter demanding Defendant cease all use of the Infringing Marks.

77.   On June 11, 2024, Quest filed a Notice of Opposition in the PTO's Trademark Trial and Appeal Board (the "TTAB") opposing Defendant's Application No. 97/403,671 based on priority and a likelihood of confusion under 15 U.S.C. § 1052(d).

78.   That opposition proceeding has not yet been resolved.

79.   On July 1, 2024, Quest submitted a letter of protest to the PTO's Deputy Commissioner for Trademark Policy protesting Defendant's Application No. 98/556,609, wherein subsequently, on December 12, 2024, the PTO issued an office action refusing Defendant's application based on a likelihood of confusion with the Quest Registrations.

80.   Defendant's Application No. 98/556,609 for the Infringing Marks is currently suspended at the PTO in the examination phase based on an issued advisory warning regarding prior-filed applications, and has not yet been published for opposition.

81.    Defendant has also recently filed trademark applications for the Infringing Marks in the intellectual property offices of Austria, Germany, Poland, Spain, France, Italy, Sweden, China, the United Kingdom, Canada, and Malaysia.

82.    Quest filed, and is planning to file, opposition or cancellation proceedings in response to these international applications, except against Defendant's applications in China and Sweden, each of which was refused registration by the respective trademark offices.

83.    The opposition proceedings in Austria, Germany, Poland, Spain, and the United Kingdom have all resulted in final and binding decisions in Quest's favor denying registration of Defendant's Infringing Marks.

84.    Defendant appealed the opposition proceeding decisions in the United Kingdom and Spain, which were unsuccessful.

85.    The cancellation proceedings in France and the opposition proceedings in Italy, Canada, and Malaysia have not yet been resolved.

86.    Quest was awarded its costs in Poland and the United Kingdom for the opposition proceedings.

87.    As evidenced by Quest's successful international enforcement proceedings against Defendant's Infringing Marks, as well as refusals to register Defendant's Infringing Marks in China and Sweden and the PTO's refusal of Defendant's Application No. 98/556,609, Defendant's Infringing Marks are likely to cause consumer confusion, and therefore infringe Quest's QUEST Marks.

88.    Defendant's unauthorized use of the Infringing Marks has continued unabated despite Quest's objections to such use and registration in jurisdictions around the world.

89.    Indeed, despite Quest's successful international enforcement proceedings and the objections Quest has raised regarding Defendant's use of its Infringing Marks, Defendant has continued to pursue registration of the Infringing Marks in both the United States and internationally.

COMPLAINT
CASE NO.

-17-

90. Defendant has also continued to expand its use of its Infringing Marks in connection with software-related products and services over Quest's express objections.

91. For example, Defendant's September 1, 2022 acquisition of EXB Solutions and May 1, 2024 acquisition of People Tech Group occurred **after** Quest raised clear objections to Defendant's use of the Infringing Marks in connection with software-related products and services.

92. Not only did these acquisitions fly in the face of Quest's objections in that these companies offer products and services that overlap and/or compete with Quest's products and services, but Defendant then rebranded these companies to indicate that they are "a Quest Global Company." Defendant has thus firmly associated its Infringing Marks with software-related products and services.

93. Well prior to the date on which Defendant may claim it first began using the Infringing Marks, Quest and/or Quest's predecessors-in-interest have registered and otherwise obtained common law rights in the QUEST Marks for use in connection with the Quest Services.

94. Despite Quest's senior and established rights in the QUEST Marks, Defendant has gone as far as suggesting that Quest should be precluded from using QUEST as a standalone mark despite such prior rights in the QUEST Marks.

95. Further, Quest and/or Quest's predecessors-in-interest have manufactured, offered, marketed, distributed, rendered, and sold the Quest Services under the QUEST Marks, prior to any first use claimed by Defendant, and such manufacture, offering, marketing, distribution, rendering, and sale of the Quest Services under the QUEST Marks also predate the filing dates of Defendant's applications and any first use date upon which it may rely.

96. Quest owns the entire right, title, and interest in and to the inherently distinctive QUEST Marks and owns, *inter alia*, the QUEST Registrations.

97. As a consequence of the foregoing, consumers in California and the

United States and the trade have come to recognize and do recognize the inherently distinctive QUEST Marks as applied to the Quest Services as being used and owned by Quest, and to identify and associate said Marks with Quest, and Quest derives substantial goodwill and value from the aforesaid recognition, association and identification by the consuming public and trade.

98.    The Infringing Marks that Defendant uses and seeks to register in its applications either incorporate the QUEST Marks in their entirety and/or are nearly identical, and thus confusingly similar in sound, appearance, and commercial impression, to the QUEST Marks.

99.    Further, the visual presentation of the Infringing Marks, including use of the wording QUEST as the dominant element and the identical font in Defendant's Infringing Logo mimic Quest's presentation of the QUEST Marks.

100.    Moreover, the services Defendant offers via its current and planned expansion beyond engineering services and into software services are highly related to and/or fall within the same categories of the goods and services offered by Quest under its QUEST Marks, and/or otherwise fall within Quest's natural zone of expansion for such goods and services.

101.    Defendant, in common with the rest of the trade and by virtue of Quest's four-decade existence under the QUEST Marks in the relevant software industry, is obviously well aware of the QUEST Marks, and of the goodwill represented and symbolized thereby.

102.    Notwithstanding Quest's brand refresh, the appearance of Quest Global's name and stylized logo—which contains a stylized "Q" letter the circular portion of which is disconnected where the tail of the "Q" should begin, and a small circle to the lower right of the "Q" where the circular portion is disconnected, which looks like a magnifying glass—is likely to cause further confusion with the QUEST Marks among consumers because companies go through brand refreshes fairly regularly such that consumers may perceive any minor distinctions in Quest Global's

name and stylized logo as being a part of a brand refresh by Quest given its close resemblance to the Former Quest Logo—in which Quest still owns trademark rights and valuable goodwill.

103.   Defendant is knowingly perpetuating its use of the Infringing Marks to foster a false connection with Quest's business and the Quest Services, and to ride on the goodwill Quest has generated therein, which has not been authorized by Quest and is occurring in a manner intended to confuse consumers such that it violates and misappropriates Quest's well-established trademark rights.

104.   As a result of the foregoing, the purchasing public familiar with the QUEST Services and the QUEST Marks is likely to be confused, misled, or deceived into thinking that Defendant's services are offered by Quest, or are in some way sponsored by or connected with Quest, and/or that the Quest Services are offered by Defendant, or are in some way sponsored by or connected with Defendant, to Quest's irreparable damage and injury.

105.   Defendant's activities have caused and will continue to cause irreparable harm to Quest and to the substantial goodwill embodied in the QUEST Marks, and said acts will continue unless restrained by this Court.  For that irreparable harm, Quest has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

## Trademark Infringement Under 15 U.S.C. § 1114(1)

106.   Quest repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

107.   Quest is the owner of U.S. Reg. Number 2,745,496 for the QUEST SOFTWARE word mark, U.S. Reg. Number 1,684,124 for the QUEST word mark, U.S. Reg. Number 3,225,071 for the QUEST word mark, and U.S. Reg. Number 5,370,028 for the Quest design mark.

108.   Each of the QUEST Registrations are incontestable under 15 U.S.C. § 1065 and are valid and subsisting.

109. Quest has been using the foregoing marks in interstate commerce for decades in connection with its technology and security software and solutions business.

110. Quest's QUEST Marks are distinctive and have become widely recognized in the United States and throughout the world as identifying Quest's high-quality goods and services.

111. Defendant's conduct, as described herein, constitutes trademark infringement of the registered QUEST Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) because Defendant's use of the Infringing Marks creates a likelihood of confusion among the consuming public as to the source, origin, or association of the parties or their goods and services, or is likely to cause mistake or to deceive.

112. Upon information and belief, Defendant was aware of Quest's QUEST Marks when it committed the acts as alleged herein and intended to profit from and appropriate the goodwill and name recognition Quest has established in the marks.

113. Defendant committed its acts of infringement in willful and flagrant disregard of Quest's lawful rights.

114. Defendant will, if not enjoined by this Court, continue its acts of trademark infringement as set forth above.

115. Defendant's trademark infringement has caused and continues to cause damage and irreparable injury to the value and goodwill of Quest's QUEST Registrations, as well as damage and irreparable injury to Quest's business, reputation, and goodwill that it has established in the QUEST Marks.

116. Quest has no adequate remedy at law for the irreparable harm because damages are continuing and difficult to ascertain.

117. On information and belief, Quest's use of its Infringing Marks is deliberate and willful and constitutes knowing infringement of Quest's marks and makes this case exceptional.

118. By virtue of the foregoing, and pursuant to Section 34 of the Lanham Act (15 U.S.C. § 1116), Quest is entitled to an order from this Court enjoining Defendant and its officers, agents, assigns, and employees from using Quest's marks or any other confusingly similar marks in the advertising, marketing, rendering, or sale of software and software-related goods and services, including but not limited to, software as a service (SAAS) solutions providing database management, data and application governance, security, performance optimization, replication, protection, migration, backup and recovery; virtual and cloud computing infrastructure management, endpoint systems management, identity and access management, cybersecurity and auditing, data modeling and optimization for AI, and platform management for Microsoft solutions, as well as technical consulting services related to the foregoing.

119. By virtue of the foregoing, Defendant's conduct is and has been exceptional and Quest is entitled to an award of treble damages and attorneys' fees under § 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

120. By virtue of the foregoing, Quest is entitled to monetary damages, together with interest thereon, including an award of Quest's sustained damages, its costs, and Defendant's profits.

## SECOND CLAIM FOR RELIEF
### Unfair Competition and Use of False Designations of Origin Under 15 U.S.C. § 1125(a)

121. Quest repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

122. Quest has been using its common law trademark rights in its QUEST Marks, since 1985 in connection with the promotion, offering for sale, sale, and distribution of its portfolio of software and software-related goods and services.

123. Quest's common law trademarks are entitled to protection because they are inherently distinctive and/or have acquired distinctiveness.

124.   Defendant's use of the confusingly similar Infringing Marks as alleged herein constitutes false designation of origin or sponsorship of Defendant's products and services and tends to falsely represent that Defendant's products and services originate from Quest or that Defendant's products and services and/or Defendant have been sponsored, approved, or licensed by Quest or are in some way affiliated or connected with Quest.

125.   Defendant's conduct is likely to confuse, mislead, and deceive Defendant's customers, purchasers, and members of the public as to the origin of Defendant's products and services or cause said persons to believe that Defendant's products and services and/or Defendant has been sponsored, approved, authorized, or licensed by Quest or are in some way affiliated or connected with Quest in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

126.   Upon information and belief, Defendant's conduct was and is willful and intentional.

127.   Defendant was aware of Quest's QUEST Marks when it committed its acts of infringement and, upon information and belief, intended to profit from and appropriate the goodwill and name recognition Quest has established in its marks.

128.   Upon information and belief, Defendant intends to cause confusion and mistake and intend to deceive the buyers of its services and products into believing that they are buying products or services produced by, marketed by, sponsored by, approved of, or licensed by Quest.

129.   As a direct and proximate result of the foregoing acts, practices, and conduct, Quest has been or is likely to be substantially injured in its business, including its reputation by Defendant's infringement of Quest's QUEST Marks, resulting in diminished goodwill and reputation, and lost revenue and profits.

130.   Defendant will, if not enjoined by this Court, continue their acts of trademark infringement as set forth above.

131.   Defendant's improper acts have caused and will continue to cause Quest

immediate and irreparable harm.

132. By virtue of the foregoing, and pursuant to Section 34 of the Lanham Act (15 U.S.C. § 1116), Quest is entitled to an order of this Court enjoining Defendant and its officers, agents, assigns, and employees from using Quest's QUEST Marks or any other confusingly similar marks in the advertising, marketing, rendering, or sale of software and software-related goods and services, including but not limited to, software as a service (SAAS) solutions providing database management, data and application governance, security, performance optimization, replication, protection, migration, backup and recovery; virtual and cloud computing infrastructure management, endpoint systems management, identity and access management, cybersecurity and auditing, data modeling and optimization for AI, and platform management for Microsoft solutions, as well as technical consulting services related to the foregoing.

133. By virtue of the foregoing, Quest has suffered damages, the exact amount of which it has not yet been able to determine, and is entitled to recover Defendant's profits, sustained damages and its costs under 15 U.S.C. § 1117.

134. By reason of the foregoing, and pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117), Defendant's conduct is and has been exceptional and Quest is entitled to injunctive relief, attorneys' fees, and treble damages, together with interest thereon, in an amount to be determined at trial.

135. Defendant's conduct constitutes unfair competition and the use of false designations of origin and false descriptions and representations in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), with respect to Quest's QUEST Marks.

### THIRD CLAIM FOR RELIEF
### Common Law Trademark Infringement

136. Quest repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

137. Quest has been using its common law trademark rights in its QUEST Marks, since 1985 in connection with the promotion, offering for sale, sale, and distribution of with its portfolio of software and software-related goods and services.

138. Quest's common law QUEST trademarks are entitled to protection because they are inherently distinctive and/or have acquired distinctiveness among consumers in California and throughout the United States.

139. Quest has been using the foregoing common law QUEST trademarks in interstate commerce and in California for years in connection with its technology and security software and solutions business.

140. Defendant's conduct as described herein constitutes infringement of Quest's common law rights in the QUEST Marks because Defendant's use of the Infringing Marks creates a likelihood of confusion among the consuming public as to the source, origin, or association of the parties or their goods and services, or is likely to cause mistake or to deceive.

141. Upon information and belief, Defendant had full knowledge of Quest's common law QUEST Marks, and acted without any regard for the likelihood of confusion of the public, when it committed the acts as alleged herein and intended to profit from and appropriate the goodwill and name recognition Quest has established in the marks.

142. Defendant committed its acts of infringement in willful and flagrant disregard of Quest's lawful rights.

143. Defendant will, if not enjoined by this Court, continue its acts of trademark infringement as set forth above.

144. Defendant's trademark infringement has caused and continues to cause damage and irreparable injury to the value and goodwill of Quest's registered marks, as well as damages and irreparable injury to Quest's business, goodwill, and reputation.

145. Quest has no adequate remedy at law because damages are continuing

and difficult to ascertain. On information and belief, Quest's use of its infringing marks is deliberate and willful and constitutes knowing infringement of Quest's marks and makes this case exceptional.

146.    By virtue of the foregoing, Quest is entitled to an order from this Court enjoining Defendant and its officers, agents, assigns, and employees from using Quest's marks or any other confusingly similar marks in the advertising, marketing, rendering, or sale of software and software-related goods and services, including but not limited to software as a service (SAAS) solutions providing database management, data and application governance, security, performance optimization, replication, protection, migration, backup and recovery; virtual and cloud computing infrastructure management, endpoint systems management, identity and access management, cybersecurity and auditing, data modeling and optimization for AI, and platform management for Microsoft solutions, as well as technical consulting services related to the foregoing.

147.    By virtue of the foregoing, Quest is entitled to monetary damages, together with interest thereon, including an award of Quest's sustained damages and Defendant's profits

148.    Defendant's conduct constitutes trademark infringement of Quest's QUEST Marks under the common law of the State of California.

### FOURTH CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law,

### Cal. Bus. & Prof. Code § 17200, *et seq.*

149.    Quest repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

150.    Under California Business and Professions Code § 17200, *et seq.*, the definition of "unfair competition" includes "any unlawful, unfair, or fraudulent business act or practice, and any act prohibited by the false advertising provisions of § 17500.

151.   Defendant, through its conduct described herein, has engaged in, and continues to engage in, unfair and/or unlawful business acts or practices in the State of California in violation of California Business and Professions Code § 17200 because Defendant's use of the Infringing Marks creates a likelihood of confusion among the consuming public as to the source, origin, or association of the parties, is likely to cause mistake or to deceive, or constitutes misappropriation of Quest's QUEST Marks and goodwill in connection with Defendant's sale of its own goods and services, thereby giving Defendant an unfair competitive advantage.

152.   Upon information and belief, Defendant had full knowledge of Quest's trademark rights in the QUEST Marks, and acted without any regard for the likelihood of confusion of the public, when it committed the acts as alleged herein and intended to profit from and appropriate the goodwill and name recognition Quest has established in the marks.

153.   Defendant's conduct with respect to the Infringing Marks has caused and will continue to cause serious damage and irreparable injury to the value and goodwill of Quest's QUEST Marks, as well as damages and irreparable injury to Quest's business, goodwill, and reputation.

154.   Defendant committed its acts of infringement with knowledge of and intent to violate Quest's lawful rights, which constitutes malicious, wanton, or oppressive conduct.

155.   Defendant will, if not enjoined by this Court, continue to engage in the infringing conducts constituting unfair and/or unlawful business practices.

156.   Quest has no adequate remedy at law because damages are continuing and difficult to ascertain.

157.   By virtue of the foregoing, Quest is entitled to an order from this Court enjoining Defendant and its officers, agents, assigns, and employees from using Quest's marks or any other confusingly similar marks in the advertising, marketing, rendering, or sale of software and software-related goods and services, including but

not limited to, software as a service (SAAS) solutions providing database management, data and application governance, security, performance optimization, replication, protection, migration, backup and recovery; virtual and cloud computing infrastructure management, endpoint systems management, identity and access management, cybersecurity and auditing, data modeling and optimization for AI, and platform management for Microsoft solutions, as well as technical consulting services related to the foregoing.

158.  By virtue of the foregoing, Quest is entitled to restitution, disgorgement of Defendant's profits, and all gains, profits, and advantages Defendant has procured as a result of its unfair and unlawful acts, the full extent of which is currently unknown.

159.  By virtue of the foregoing, Quest seeks exemplary or punitive damages for Defendant's intentional misconduct.

160.  Defendant's conduct constitutes unfair and/or unlawful business practices in violation of California Business and Professions Code § 17200.

## PRAYER FOR RELIEF

WHEREFORE, Quest prays for a judgment in its favor against Defendant as follows:

1.    Permanently enjoining and restraining Defendant, its officers, agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, from all acts of trademark infringement, unfair competition, and/or any other wrongful conduct alleged in this Complaint;

2.    Awarding Quest its actual damages incurred as a consequence of Defendant's wrongful conduct as described herein, pursuant to 15 U.S.C. § 1117(a) and California law;

3.    Directing Defendant to account to Quest for its profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a) and California law;

4. Awarding Quest its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117, any other applicable law or statute, and the inherent authority of the Court;

5. Awarding Quest pre-judgment and post-judgment interest at the rate provided by law;

6. Directing the PTO to refuse U.S. Application Nos. 97/403,671 and 98/556,609, pursuant to 15 U.S.C. § 1119, to the extent that they seek to register the Infringing Marks in connection with advertising, marketing, rendering, or sale of software and software as a service (SAAS) solutions providing database management, data and application governance, security, performance optimization, replication, protection, migration, backup and recovery; virtual and cloud computing infrastructure management, endpoint systems management, identity and access management, cybersecurity and auditing, data modeling and optimization for AI, and platform management for Microsoft solutions, as well as technical consulting services related to the foregoing or any similar software services in International Classes 9 and 42; and

7. Awarding Quest such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all of its claims so triable pursuant to Fed. R. Civ. P. 38(b) and 38(c) and under the United States Constitution.

Dated:  May 8, 2026

DORSEY & WHITNEY LLP


By: */s/ Case Collard*
    Case Collard – SBN 245834
    collard.case@dorsey.com
    Maral J. Shoaei – SBN 345117
    Shoaei.maral@dorsey.com

***Attorneys for Plaintiff Quest Software Inc.***